DCP:JPL/JOE
F. #2018R00035

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

STEVEN NERAYOFF,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. <u>20-CR-008 (MKB)</u>

THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT STEVEN NERAYOFF'S PRETRIAL MOTION TO
DISMISS THE INDICTMENT, DISCLOSE PORTIONS OF THE GRAND JURY
PROCEEDINGS AND COMPEL DISCOVERY FROM THE GOVERNMENT, AND
IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS THE INDICTMENT
<u>PURSUANT TO RULE 48(A) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE</u>

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Jonathan P. Lax
John O. Enright
Assistant U.S. Attorneys
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 1

I.   The Indictment ............................................................................................................ 1

II.  Hlady's Guilty Plea ..................................................................................................... 2

III. The Defendant's Motion ............................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.   The Indictment Does Not Rest On Materially False Or Perjured Testimony ........... 5

     A.  Applicable Law ................................................................................................... 6

     B.  Discussion ........................................................................................................... 7

II.  The Court Should Not Order Disclosure Of The Grand Jury Minutes Or *In Camera* Review  9

     A.  Applicable Law ................................................................................................... 10

     B.  Discussion ........................................................................................................... 10

III. Nerayoff's Motion For Discovery Under Rule 16 and *Brady* Should Be Denied ................. 12

     A.  Defense Request #1: "Notes and reports or any statements made, or information provided
         by Michael Hlady to any employee of the Federal Government or its agent (including but
         not limited to FBI, DOJ, SEC, FINRA)." ......................................................... 14

     B.  Defense Request #2: "Documents provided to any employee of the Federal Government
         or its agent (including by not limited to FBI, DOJ, SEC, FINRA) by Hlady concerning
         Steven Nerayoff or Alchemist." .......................................................................... 15

     C.  Defense Request #3: "Emails and text messages between Michael Hlady and FBI Agent
         Jordan Anderson or any other government agent." ........................................... 15

     D.  Defense Request #4: "Recordings made by Michael Hlady of Steven Nerayoff, Jane Doe
         or John Doe." ..................................................................................................... 16

     E.  Defense Request #5: "Emails and text messages between Michael Hlady and Jane Doe,
         John Doe or Jeff Pulver." ................................................................................... 16

F.   Defense Request #6: "To the extent that the FBI has created or maintained any file concerning Hlady and his status as an informant, information source or cooperator, such file would be relevant considering his charged status as a co-conspirator." .................... 16

G.   Defense Request #7: "We also request an opportunity to examine any cell phone or personal computer, laptop, tablet or any other device in the possession of the government to search for the items sought in paragraphs 1-7 [sic]." .................................................... 17

H.   Defense Request #8: "Any reports or notes by members of the Federal Government regarding the arrest of Steven Nerayoff on September 19, 2019 and a copy of the warrant to search Mr. Nerayoff's home on that date.".................................................................. 17

I.   Defense Request #9: "A copy of the subpoena that Mr. Nerayoff received on February 27, 2018 pertaining to a purported investigation of Jonathan Lucas." ............................ 18

J.   Defense Request #10: "A copy of any notes and reports relating to Mark Bartlett, Esq. contact with the NYC FBI office in September of 2018 relating to Company 1, Nerayoff, Hlady, Jane Doe or John Doe.".......................................................................................... 18

K.   Defense Request #11: "To inspect and to copy, photograph, etc. any of Mr. Nerayoff's papers, documents, data, photographs, tangible objects, in the government's possession, custody, or control obtained from Mr. Nerayoff or previously under his control— including but not limited to the digital information the Government received from Apple Inc. that resided on Mr. Nerayoff's Apple i-cloud backup." ........................................... 19

THE GOVERNMENT'S MOTION TO DISMISS ..................................................................... 19

CONCLUSION.......................................................................................................................... 20

TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                    <u>PAGE(S)</u>

Bank of Nova Scotia v. United States,
    487 U.S. 250 (1988).................................................................................................... 7

Brady v. Maryland,
    373 U.S. 83 (1963)........................................................................................... 3, 12, 13

Chacko v. United States,
    No. 04-CV-2258 (JGK), 2005 WL 1388723 (S.D.N.Y. June 8, 2005) ..................... 6

Costello v. United States,
    350 U.S. 359 (1956).................................................................................................... 6

Giglio v United States,
    405 U.S. 150 (1972)........................................................................................ 15, 16, 19

Hamling v. United States,
    418 U.S. 87 (1974).................................................................................................... 10

Hart v. RCI Hospitality Holdings, Inc.,
    90 F. Supp. 3d 250 (S.D.N.Y. 2015) ........................................................................ 5

Kyles v. Whitely,
    514 U.S. 419 (1995).................................................................................................. 14

United States v. Aiyer,
    33 F.4th 97 (2d Cir. 2022) ......................................................................................... 6

United States v. Barrera,
    950 F. Supp. 2d 461 (E.D.N.Y. 2013) ......................................................... 14, 15, 18

United States v. Basurto,
    497 F.2d 781 (9th Cir. 1974)................................................................................... 8, 9

United States v. Bruno,
    159 F. Supp. 3d 311 (E.D.N.Y. 2016) ..................................................................... 10

United States v. Calandra,
    414 U.S. 338 (1974).................................................................................................... 6

United States v. Diaz,
    675 F. Supp. 1382 (E.D.N.Y. 1987) ......................................................................... 6

United States v. Frias,
    521 F.3d 229 (2d Cir. 2008) .................................................................................. 6, 7

United States v. Goldman,
    451 F. Supp. 518 (S.D.N.Y. 1978) ....................................................................... 8, 9

United States v. Guillette,
    547 F.2d 743 (2d Cir. 1976) .................................................................................... 9

United States v. Hay,
    No. 19-CR-170 (RJA), 2023 WL 142119 (W.D.N.Y. Jan. 10, 2023).................... 10

United States v. Hendrickson,
    26 F.3d 321 (2d Cir. 1994) ..................................................................................... 12

United States v. Hunter,
    32 F.4th 22 (2d Cir. 2022) ................................................................ 14, 15, 16, 18

United States v. Leung,
    40 F.3d 577 (2d Cir. 1994) ............................................................................. 10, 11

United States v. Mannino,
    480 F. Supp. 1182 (S.D.N.Y. 1979) ..................................................................... 14

United States v. Messina,
    No. 11-CR-31 (KAM), 2011 WL 3471511 (E.D.N.Y. Aug. 8, 2011).................... 17

United States v. Naseer,
    38 F. Supp. 3d 269 (E.D.N.Y. 2014) ..................................................................... 6

United States v. Okon,
    No. 19-CR-492 (MKB), 2022 WL 4121142 (E.D.N.Y. Sept. 9, 2022).................. 15

United States v. Percevault,
    490 F.2d 126 (2d Cir. 1974) ........................................................................... 14, 15

United States v. Procter & Gamble Co.,
    356 U.S. 677 (1958) .............................................................................................. 11

United States v. Sampson,
    898 F.3d 270 (2d Cir. 2018) .................................................................................... 6

United States v. Schlegel,
    687 F. App'x 26 (2d Cir. 2017) ...................................................................... 10, 11

United States v. Shkreli,
    No. 15-CR-637 (KAM), 2016 WL 8711065 (E.D.N.Y. 2016) ............................. 13

United States v. Sobotka,
    623 F.2d 764 (2d Cir. 1980) .................................................................................. 10

United States v. Stewart,
    433 F.3d 273 (2d Cir. 2006) ................................................................ 14

United States v. Strouse,
    286 F.3d 767 (5th Cir. 2002) ............................................................... 7

United States v. Torres,
    901 F.2d 205 (2d Cir. 1990) ........................................................... 10, 11

United States v. Ulbricht,
    858 F.3d 71 (2d Cir. 2017) ................................................................ 10

United States v. Vasquez,
    No. 15-CR-252 (PKC), 2021 WL 2186224 (E.D.N.Y. May 27, 2021) .................... 17

United States v. Woodberry,
    546 F. Supp. 3d 180 (E.D.N.Y. 2021) .................................................... 10

STATUTES

18 U.S.C. § 1951 .............................................................................. 2, 19, 20

18 U.S.C. § 3500 .......................................................................... 14, 15, 16, 17, 19

18 U.S.C. § 371 ................................................................................ 2, 20

RULES

Fed. R. Crim. P. 16(a) ......................................................................... passim

Fed. R. Crim. P. 408 ............................................................................. 5

Fed. R. Crim. P. 5(f) ............................................................................ 14

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to defendant Steven Nerayoff's February 13, 2023 pretrial motion (the "Defendant's Motion," ECF Dkt. No. 105). Nerayoff is charged in a four-count indictment in connection with a scheme to extort money and virtual currency (the "Indictment," ECF Dkt No. 30). Nerayoff now moves to (1) dismiss the Indictment on the ground that it rests on materially false testimony, (2) seek disclosure of portions of the grand jury minutes to resolve its motion to dismiss or, in the alternative, for an in camera review, and (3) order the government to provide certain materials in discovery. The Defendant's Motion should be denied.

Notwithstanding, for the reasons set forth below, the government hereby moves pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the Indictment with prejudice.

BACKGROUND

I.    THE INDICTMENT

On January 10, 2020, a grand jury in this District returned the four-count Indictment charging the defendant Steven Nerayoff ("Nerayoff") and his co-defendant Michael Hlady, also known as "Michael Peters" ("Hlady"), for their roles in a conspiracy and scheme to extort money and virtual currency from Company 1, a Seattle, Washington-based cryptocurrency business, John Doe, Company 1's Chief Executive Officer, and Jane Doe, Company 1's President and Chief Operating Officer.[1]  Count One of the Indictment charges Nerayoff and Hlady with Hobbs Act

---

[1]    The defendants were arrested on or about September 18 and 19, 2019 pursuant to a criminal complaint charging Hobbs Act Extortion Conspiracy in violation of 18 U.S.C. § 1951(a). (See ECF Dkt. No. 1, 5 and Sept. 19, 2019 Minute Entry.)

Extortion Conspiracy between June 2017 and November 2018, in violation of 18 U.S.C. § 1951(a); Count Two charges Nerayoff with Hobbs Act Extortion between October 2017 and November 7, 2017, in violation of 18 U.S.C. § 1951(a); Count Three charges Nerayoff and Hlady with Hobbs Act Extortion in or about March 2018, in violation of 18 U.S.C. § 1951(a); and Count Four charges Nerayoff and Hlady with Conspiracy to Transmit Interstate Communications with Intent to Extort between March 22, 2018 and March 28, 2018, in violation of 18 U.S.C. § 371.

The charges principally stem from two related series of interactions.  First, Nerayoff's dealings with Company 1, John Doe and Jane Doe leading up to Company 1's November 7, 2017 initial coin offering ("ICO") or "crowdsale."[2]  And, second, Nerayoff's acquisition of a 10,000 Ethereum ("ETH")[3] loan from Company 1 in March 2018.

## II.   HLADY'S GUILTY PLEA

On April 5, 2021, Hlady pleaded guilty before the Court to Count One of the Indictment.  During his plea hearing, while under oath, Hlady allocuted as follows:

> In the end of 2017 and 2018 I agreed, with another [Nerayoff], to obtain money from a business person that's identified in the indictment by threatening economic harm to that person's business, company and if they did not provide a loan to my coconspirator named in the indictment, my coconspirator didn't have any right, any lawful right to demand that money.

> In furtherance of that agreement, while I was at JFK Airport in Queens, I sent a text to the business person in which I threatened damage to destroy the person's business if the loan was not provided promptly.

---

[2]     An ICO or "crowdsale" was a fundraising event during which an entity offered participants a unique "coin" or "token" in exchange for consideration.  The tokens or coins were generally issued on a "blockchain" or a cryptographically secured ledger.  The tokens or coins were often paid for in "virtual currency."

[3]     Ethereum or ETH is a virtual currency.

(ECF Apr. 5, 2021 Minute Entry; Tr. at 20:5-15.)

At the plea hearing, the Court found that Hlady entered his plea knowingly and voluntarily and that there was factual basis for the plea that satisfied the essential elements of the offense, and accepted his plea of guilty to Count 1. (ECF Apr. 5, 2021 Minute Entry; Tr. at 23:9-16.)

III.   THE DEFENDANT'S MOTION

On February 13, 2023, Nerayoff filed the instant motion, which, at bottom, is premised on the following false and interrelated assertions: Hlady was a government informant who conspired with the government and others to frame Nerayoff; the government presented materially false evidence to the grand jury to do so; and the government knew or should have known of this purported conspiracy by February 2019. Based on these claims, the Defendant's Motion seeks three categories of relief: (1) dismissal of the indictment on the ground that it rests on materially false testimony concerning Nerayoff's dealings with Company 1, John Doe and Jane Doe in violation of his Fifth Amendment due-process- and grand-jury-clause rights (Def. Mot. at 5-9);[4] (2) disclosure of those portions of the grand jury minutes necessary to resolve his motion to dismiss, or, in the alternative, the Court's in camera review of those minutes (id. at 10-11); and (3) disclosure of additional categories of information under Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16") and Brady v. Maryland, 373 U.S. 83 (1963) and its progeny that Nerayoff claims is material to his defense and resolution of the motion (id. at 12-22)).

---

[4]     Parenthetical references to the Defendant's Motion are made with respect to the memorandum of law filed under ECF Dkt. No. 105-47.

ARGUMENT

The Defendant's Motion rests on faulty and circular logic.  According to Nerayoff, he did not commit any federal crimes.  As Nerayoff must concede, however, a grand jury determined there was probable cause that he committed four federal crimes and returned the Indictment.  In Nerayoff's view, that the grand jury did so thus leads to the "inescapable conclusion" that the government must have presented materially false and perjurious testimony to the grand jury.  In an attempt to overcome the high standard he faces, Nerayoff spins a baseless theory of misconduct premised on the claim that his co-defendant, Hlady, acting as a government informant, conspired with the government and others to set him up.  That this theory is wrong is evidenced by, among other things, the fact that Hlady pleaded guilty to Count One of the Indictment approximately two years ago.  The government thus turns to Nerayoff's three claims.

Nerayoff's first argument—that the indictment should be dismissed on account of government misconduct—fails because he cannot meet his high burden of establishing that the indictment is somehow invalid on its face.  The Indictment tracks the language of the charged statutes and identifies the approximate dates of the relevant conduct and is thus presumptively valid.  Because Nerayoff cannot overcome his high burden of establishing facial invalidity, he resorts to self-serving factual arguments, which, in his view, lead to the "inescapable conclusion" that the government presented "obviously false and perjurious" evidence to the grand jury.  The government did not present false or perjurious evidence to the grand jury.  Supreme Court precedent makes plain that the Court may not look behind the Indictment to determine the sufficiency of the evidence; that task is left to a jury.

Nerayoff also seeks to substantiate his conspiracy theory by asking the Court to disclose relevant portions of the grand jury's minutes or to conduct an in camera review of them. This claim too fails.  The defendant has not—and cannot—meet the high burden of overcoming

the presumption that the grand jury proceedings were lawful and regular.  Nerayoff has not set out

the requisite concrete allegations of government misconduct, because he cannot.[5]  Nor has he

articulated the type of particularized need to review the grand jury's minutes that would outweigh

the government's strong interest in maintaining grand jury secrecy.

Because Nerayoff cannot meet his burden to dismiss the indictment or gain access

to minutes of the grand jury proceedings, he makes an effort to improperly bolster those claims by

seeking disclosure of materials, many of which do not exist, he already has, or he is not otherwise

entitled to.  As such, the Court should deny this last claim and the Defendant's Motion in its

entirety.

I.    THE INDICTMENT DOES NOT REST ON MATERIALLY FALSE OR PERJURED
      TESTIMONY

Nerayoff has failed to establish what he is required to do in seeking dismissal of an

indictment—showing that the Indictment is facially invalid.  His motion to dismiss the Indictment

should thus be denied.

---

[5]    In his sworn affidavit, defense counsel has also made baseless accusations of government misconduct that reference specific details of protected resolution discussions which the government entered into in good faith with the defendant, including that as part of a proposed resolution the government required a waiver of the defendant's ability to bring a lawsuit against the government.  (See Scotto Decl., ¶ 160).  The defendant's argument is incorrect.  The government was seeking to include important form language that is a component of resolutions this Office reaches with any defendant and consistent with its standard practice.  But the argument is also misleading and improper to include in a submission to the Court.  Defense counsel's attempt to justify the inclusion of this information in his declaration by citing to Rule 408 of the Federal Rules of Criminal Procedure and Hart v. RCI Hospitality Holdings, Inc., 90 F. Supp. 3d 250 (S.D.N.Y. 2015) is misplaced.  In Hart, a civil case, a district court excluded evidence of settlement discussions offered by a party to prove the other party's state of mind – essentially the very purpose defense counsel purports to offer this information for here.  Id. at 284-85.  If defense counsel's reading of Rule 408 is applied, it would undercut the very purpose behind the rule and chill plea negotiations between the defense and the government.  During resolution discussions to which defense counsel refers, the government requested assurances that those discussions be subject to Rule 408 and treated accordingly, which assurances were provided.

A.      Applicable Law

To validly state an offense, an indictment need only track the language of the relevant statute and, if needed, approximate the time and place of the relevant conduct.  United States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008).  The Supreme Court has held that an indictment valid on its face generally is not subject to a challenge that it was based upon unreliable or incompetent evidence.  See United States v. Calandra, 414 U.S. 338, 344-345 (1974); Costello v. United States, 350 U.S. 359, 363 (1956) (holding that a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient); see, e.g., Chacko v. United States, No. 04-CV-2258 (JGK), 2005 WL 1388723, at *5–6 (S.D.N.Y. June 8, 2005) (citing United States v. Diaz, 675 F. Supp. 1382, 1389 (E.D.N.Y. 1987)).

A defendant cannot thus seek to dismiss an indictment based on the sufficiency of the government's evidence of guilt because that issue must be determined by a jury.  As the Second Circuit has explained, "although a district court can make factual determinations in matters that do not implicate the general issue of a defendant's guilt when assessing a Rule 12 motion [to dismiss an indictment], it cannot resolve a factual dispute that is inextricably intertwined with a defendant's potential culpability, as that is a role reserved for the jury."  United States v. Aiyer, 33 F.4th 97, 116 (2d Cir. 2022).  In other words, "although a judge may dismiss a civil complaint pretrial for insufficient evidence, a judge generally cannot do the same for a federal criminal indictment."  United States v. Sampson, 898 F.3d 270, 280 (2d Cir. 2018); see also United States v. Naseer, 38 F. Supp. 3d 269, 274 (E.D.N.Y. 2014) ("[T]he sufficiency of the evidence . . . is not appropriately addressed on a pretrial motion to dismiss an indictment.  The test of the evidence is the trial.") (internal citations and quotations omitted).

As such, a district court cannot dismiss an indictment even if it was based upon misleading or inaccurate testimony before the grand jury, in the absence of any prosecutorial

misconduct in connection with such testimony.  See Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988); United States v. Strouse, 286 F.3d 767, 772 (5th Cir. 2002) (perjury before grand jury that was not knowingly sponsored by government could not form basis for district court's dismissal of indictment under its limited supervisory power over grand jury process). Indeed, even when prosecutorial misconduct is shown, a district court may only dismiss an indictment on that basis if the associated errors prejudiced the defendant.  See Bank of Nova Scotia, 487 U.S. at 263.

B.    Discussion

Nerayoff does not claim that the Indictment fails to track the language of the charged statutes or that he has not been apprised of the approximate time and place of the relevant conduct because he cannot.  See Frias, 521 F.3d at 235.  This failing alone bars his claim.  Nerayoff thus asks the Court, on the one hand, to do something it cannot do, namely, look beyond the Indictment and hold that it is invalid because the grand jury "must have" been presented with materially false and perjurious evidence.  On the other hand, Nerayoff concedes that he "is not privy to what evidence the grand jury received" (Def. Mot. at 6) and he cannot even identify who testified in the grand jury (see Def. Mot. at 5 n.3 ("Whomever testified in the grand jury knowing that the statements were materially false . . . .") (emphasis added)).

Nerayoff has not—and cannot—point to any real evidence that a government grand jury witness (who is yet to be identified) knowingly presented materially false testimony to the grand jury, or, even if false testimony was presented, that it would have substantially influenced the grand jury's decision to indict.  Rather, Nerayoff is surmising that false testimony must have been presented to the grand jury in light of his own interpretation of the evidence and incorrect assumptions about what material the government had access to and when.  Indeed, Nerayoff virtually attempts to try this case by way of pretrial motion accompanied by attorney declaration

7

replete with speculation and inference over hundreds of pages of exhibits and hours of audio and video recordings.[6]  Such attempts must be rejected; this is the province of the jury.  Because the government did not present materially false or perjurious evidence to the grand jury, Nerayoff simply lacks the evidence necessary to support dismissal, as required under the law.

Indeed, the precedent Nerayoff cites in support of his motion to dismiss is easily distinguished.  Nerayoff first cites to the Ninth Circuit's 1974 decision in United States v. Basurto, where that court reversed a district court's denial of a motion to dismiss an indictment in light of an unindicted co-conspirator's pretrial disclosure to the government that he had perjured himself in the grand jury.  497 F.2d 781 (9th Cir. 1974).  The grand jury witness admitted to "commit[ing] perjury before the grand jury in important respects.  In particular, he told the prosecutor that all his grand jury testimony relating to his knowledge of appellants' activities in the conspiracy prior to May 1, 1971, was untrue." Id. at 784.  Notwithstanding this disclosure, the prosecutor declined to disclose the perjured testimony to the grand jury or the court and proceeded to trial.  Id. at 784-85.[7]  The Basurto holding is thus inapplicable here given no grand jury witness perjured himself or herself, much less did so and informed the government of the perjury.

Nerayoff next cites to United States v. Goldman, a 1978 district court decision that relied on Basurto in granting a motion to dismiss the indictment under wholly inapposite facts.  451 F. Supp. 518 (S.D.N.Y. 1978).  In Goldman, unlike here, a government witness admitted to

---

[6]     Tellingly, Nerayoff even acknowledges that "at first glance, [his] claims might be viewed as tin-foil hat material."  (Scotto Decl., ECF Dkt No. 105-1 at ¶ 11 (quotation marks omitted).)

[7]     The Ninth Circuit noted that jeopardy had not attached as of the time the prosecutor was told of the perjured testimony.  "[I]f the prosecutor had brought the perjury to the court's attention before the trial commenced and the indictments had been dismissed, the Double Jeopardy Clause of the Fifth Amendment would not have barred trial under a new indictment." Id. at 785.

the government mid-trial to having committed perjury both before the grand jury and at trial.  <u>Id.</u> at 519-20.  As Nerayoff concedes (Def. Mot. at 7), the <u>Goldman</u> court cited approvingly to <u>United States v. Guillette</u>, 547 F.2d 743, 752-53 (2d Cir. 1976), a decision in which the Second Circuit, in dicta, approved of the principles espoused in <u>Basurto</u>.  <u>Id.</u> at 520.  But importantly, the <u>Guillette</u> court held that that while a key government witness had recanted perjurious trial testimony, there was no "indication that his grand jury testimony was false.  Under those circumstances, 'where subsequent events merely cast doubt on the credibility of grand jury witnesses,' the Second Circuit held that due process did not require dismissal of the indictment."  <u>Id.</u> at 521 (quoting <u>Guillette</u>, 547 F.2d at 753).

Nerayoff's speculative assertions about what the evidence shows are insufficient to overcome the "presumption of regularity" afforded to grand jury proceedings.  But even if there were any truth to Nerayoff's conjecture, it rests on evidentiary arguments to be decided by a jury, not by the Court on this pretrial motion.  Accordingly, the Court should deny Nerayoff's motion to dismiss the indictment.

II.    <u>THE COURT SHOULD NOT ORDER DISCLOSURE OF THE GRAND JURY MINUTES OR <em>IN CAMERA</em> REVIEW</u>

Because Nerayoff's motion to dismiss falls short, he also seeks evidence to substantiate that claim.  Specifically, Nerayoff seeks to inspect the grand jury minutes in the hopes that it will corroborate his supposition that the unidentified grand-jury witness knowingly presented false testimony to the grand jury.  (Def. Mot. at 10-11.)  As explained in Section I above, the Indictment satisfies the pleading requirements of the Federal Rules of Criminal Procedure, and Nerayoff has not articulated a sufficient reason to doubt the validity of the Indictment or the presentation of materials to the grand jury.  Therefore, Nerayoff's request to inspect the grand jury minutes or allow for the Court's <u>in camera</u> inspection of them should be denied.

A.    <u>Applicable Law</u>

The Supreme Court has held that grand jury proceedings are presumed to be lawful and regular.  <u>See</u> <u>Hamling v. United States</u>, 418 U.S. 87, 139 n.23 (1974); <u>United States v. Torres</u>, 901 F.2d 205, 232 (2d Cir. 1990) (grand jury proceedings "carry a presumption of regularity.")  As such, a defendant seeking to disturb the secrecy of the grand jury "bears a heavy burden." <u>United States v. Schlegel</u>, 687 F. App'x 26, 30 (2d Cir. 2017).  A defendant is "not entitled to inspect grand jury minutes and evidence without producing concrete allegations of government misconduct."  <u>United States v. Leung</u>, 40 F.3d 577, 582 (2d Cir. 1994); <u>United States v. Sobotka</u>, 623 F.2d 764, 768 (2d Cir. 1980) (opining that, if a person seeks disclosure of grand jury minutes, "the showing of need [for the disclosure] must be made "with particularity"); <u>United States v. Hay</u>, No. 19-CR-170 (RJA), 2023 WL 142119, at *13 (W.D.N.Y. Jan. 10, 2023).  More specifically, a defendant bears the burden of making out a "particularized need" outweighing the government's strong interest in maintaining the secrecy of the grand jury's proceedings.  <u>United States v. Ulbricht</u>, 858 F.3d 71, 107 (2d Cir. 2017); <u>Schlegel</u>, 687 F. App'x at 30; <u>Hay</u>, 2023 WL 142119 at *13.

A defendant seeking disclosure of grand jury minutes must present more than "[s]peculation and surmise as to what occurred before the grand jury."  <u>United States v. Woodberry</u>, 546 F. Supp. 3d 180, 190 (E.D.N.Y. 2021); <u>see also</u> <u>United States v. Bruno</u>, 159 F. Supp. 3d 311, 322 (E.D.N.Y. 2016) ("A court will not authorize disclosure of grand jury minutes when the defendant alleges mere speculation as to what occurred in front of the grand jury.").

B.    <u>Discussion</u>

Nerayoff has failed to meet what he concedes is the "heavy burden of showing that 'compelling necessity' outweighs countervailing public policy in order to disturb the presumption of the 'indispensable secrecy of grand jury proceedings,'" in light of the "'presumption of

10

regularity attaches to grand jury proceedings.'" (Def. Mot. at 10 (quoting <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 682 (1958); <u>United States v. Leung</u>, 40 F.3d 577, 581 (2d Cir. 1994)).

Nerayoff is not entitled to review grand jury minutes largely for the same reasons his motion to dismiss should not be granted—he has offered only speculation and innuendo as to what may have been presented in the grand jury based on his self-serving conclusion that the evidence at the time of his indictment did not support his guilt and he was the target of some (fictitious) wide-ranging government conspiracy and coverup.  <u>See</u> <u>Torres</u>, 901 F.2d at 233 ("A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."); <u>United States v. McCoy</u>, No. 14-CR-6181, 2016 U.S. Dist. LEXIS 130603, at *24-25 (W.D.N.Y. Sept. 21, 2016) (holding that speculative assertions of presentation of perjured testimony or other prosecutorial misconduct do not entitle defendant to dismissal of the indictment or inspection of grand jury minutes).

Nerayoff's request to inspect grand jury materials should also be denied because it is based on challenges to the sufficiency of the government's evidence and speculation regarding what may have happened in the grand jury.  Nerayoff provides sweeping, conclusory allegations that "there is indisputable evidence that Mr. Nerayoff's dealings with Company 1 and its executives were entirely lawful and that the government knew as much as early as February 2019" and that "the <u>uncontroverted evidence</u> establishes that any testimony that Mr. Nerayoff extorted <u>anyone</u> is indisputably and objectively false and a review of the minutes relating to those falsehoods will directly support Mr. Nerayoff's motion to dismiss."  (Def. Mot. at 11.)

This highly speculative argument, however, cannot overcome the adequacy of the indictment or the presumption of regularity of the grand jury proceedings.  Nerayoff's concerns about the grand jury proceedings, and his desire to further develop his meritless arguments

advanced in in support of his motion to the dismiss the Indictment fall far short of the showing required to warrant the abrogation of grand jury secrecy.

Nerayoff's request to disclose relevant portions of the grand jury minutes or, in the alternative, to allow for in camera inspection of those minutes, should be denied.

III.     NERAYOFF'S MOTION FOR DISCOVERY UNDER RULE 16 AND *BRADY* SHOULD BE DENIED

Nerayoff seeks eleven additional categories of information he asserts will be material to his defense. The government has met its Rule 16 discovery and Brady obligations. Nothing more is required. Indeed, in light of the government's cross-motion to dismiss the Indictment each of these requests is likely to be moot. Notwithstanding, the government responds to Nerayoff's various requests.

As an initial matter, the basis for these additional requests is premised on the inaccurate assumption that Michael Hlady, the defendant Nerayoff's co-defendant and co-conspirator, did not and could not have conspired with Nerayoff because Hlady was secretly acting as a government agent at various times during the government's investigation of this case. In support of that argument, Nerayoff cites United States v. Hendrickson, 26 F.3d 321, 333 (2d Cir. 1994) for the proposition that it is impossible for a defendant to conspire with a government agent and therefore Nerayoff could not be guilty of the charged crimes "under any possible legal theory." (Def. Mot. at 16 n.13.) Such is not the law. For it is not merely the status of the co-conspirator that is relevant to the inquiry—i.e., whether Hlady was in fact a confidential informant or otherwise an agent of the government, which he was not—but rather, the intent of the co-conspirator—i.e., whether Hlady acted with criminal intent when he agreed with Nerayoff to engage in the charged extortion scheme. Hendrickson, 26 F.3d at 333 ("[T]o establish a conspiratorial agreement, the Government must demonstrate that the conspirators possessed at least the degree of criminal intent

necessary for the substantive offense itself.  More specifically, proof of a conspiratorial agreement requires evidence, which may be circumstantial, that the conspirators *intended* to agree to commit an unlawful act.") (internal quotation marks and citations omitted, emphasis in original).  Here, the Court need not accept Nerayoff's invitation to speculate because Hlady's intent to conspire with Nerayoff has been proven beyond a reasonable doubt by virtue of Hlady's April 5, 2021 guilty plea.

The inaccuracy of Nerayoff's conspiracy theory concerning Hlady is further exemplified by his supposition that the government, in its plea agreement with Hlady, agreed not to prosecute Hlady for framing Nerayoff.  (See Scotto Decl., ECF Dkt No. 105-1 at ¶ 153 n.119 ("the government promised Hlady that they would not prosecute him for any criminal conduct committed against Mr. Nerayoff described herein above.").  As the Court is aware, Hlady's plea agreement includes no such provision.  Accordingly, Nerayoff's conjecture that Hlady was a government agent is false and therefore not a proper basis upon which discovery should be ordered.[8]

The Court should thus deny Nerayoff's requests for the eleven additional categories of information he seeks, which the government addresses in turn.

_____

[8]     As noted herein, Nerayoff's requests for discovery are improper and characterizing them as requests for Brady material does not render them proper.  The government is aware of and has complied with its obligation under Brady.  Further, as Nerayoff notes, the Court previously ordered the government — as it is required to do by Fed. R. Crim. P. 5(f) — to comply with Brady, and the government has acknowledged on the record that it is aware of and will fulfill its obligations.  See ECF Dkt. No. 32.  An additional order from the Court is therefore unnecessary.  See, e.g., United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *2 (E.D.N.Y. 2016) ("Courts of this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the [g]overnment has, as here, made a good-faith representation to the Court and defense counsel that it recognizes and will comply with its disclosure obligations under Brady.").

A.    Defense Request #1: "Notes and reports or any statements made, or information provided by Michael Hlady to any employee of the Federal Government or its agent (including but not limited to FBI, DOJ, SEC, FINRA)."

This request is overly broad and falls well outside the scope of the government's discovery obligations.  The government's discovery obligations do not extend to "any employee of the Federal Government its agent."  Rather, disclosure obligations are limited to those on the "prosecution team," in other words, to "'others acting on the government's behalf in the case'" or who are an "'arm of the prosecutor.'"  See, e.g., United States v. Hunter, 32 F.4th 22, 36-37 (2d Cir. 2022) (quoting Kyles v. Whitely, 514 U.S. 419 (1995); United States v. Stewart, 433 F.3d 273, 298 (2d Cir. 2006)).  While the government does not dispute that various employees and agents of the U.S. Department of Justice, including the Federal Bureau of Investigation, fall within the category of the "prosecution team" in this case, employees and agents of the U.S. Securities and Exchange Commission (SEC), a civil regulatory agency, or of the Financial Industry Regulatory Authority (FINRA), a government-authorized not-for-profit organization, do not.

Additionally, under Rule 16(a) of the Federal Rules of Criminal Procedure, Nerayoff is only entitled at this time to the disclosure of statements that he himself made.  United States v. Barrera, 950 F. Supp. 2d 461, 474-75 (E.D.N.Y. 2013) (citing United States v. Mannino, 480 F. Supp. 1182, 1187 (S.D.N.Y. 1979)).  "'Rule 16(a) simply does not encompass [the statements of co-conspirators], nor does the Jenks Act [18 U.S.C. § 3500] permit their disclosure over the objection of the government.'"  Barrera, 950 F. Supp. 2d at 475 (quoting United States v. Percevault, 490 F.2d 126, 131 (2d Cir. 1974)) (alterations in original).  Nevertheless, the government already produced materials that are responsive to this request approximately three years ago, see DOJ-000006035 to DOJ-000006050 (produced February 25, 2020), which production is subject to the conditions of the October 18, 2019 protective order, ECF Dkt. No. 21.

Finally, in the event this request is not rendered moot, to the extent that additional such information not yet disclosed is in the government's possession and becomes Giglio v United States, 405 U.S. 150 (1972) material, or is contained within a recorded statement made by a prospective government witness and becomes 18 U.S.C. § 3500 material, such material would not be discoverable until trial.  See Fed. R. Crim. P. 16(a)(2); 18 U.S.C. § 3500; see also United States v. Okon, No. 19-CR-492 (MKB), 2022 WL 4121142, at * 8 (E.D.N.Y. Sept. 9, 2022) (there is no constitutional right to early disclosure of Giglio or § 3500 material) (citing cases).

B.   Defense Request #2: "Documents provided to any employee of the Federal Government or its agent (including by not limited to FBI, DOJ, SEC, FINRA) by Hlady concerning Steven Nerayoff or Alchemist."

This request is overly broad and falls well outside the scope of the government's discovery obligations, particularly to the extent that it calls for documents not in the possession of the "prosecution team."  See Hunter, 32 F.4th at 36-37.  Notwithstanding, pursuant to Fed. R. Crim. P. 16(a)(1)(E), the government has already produced documents responsive to this request, see, e.g., DOJ-000005936 to DOJ-000005965 (produced February 25, 2020), and, in the event this request is not rendered moot, will continue to do so to the extent it identifies additional such materials in its possession that have not already been produced.

C.   Defense Request #3: "Emails and text messages between Michael Hlady and FBI Agent Jordan Anderson or any other government agent."

For the sake of clarity, the government is in possession of materials responsive to this request.  The mere fact, however, that a federal agent communicated with an individual does not render that individual a confidential informant or agent of the government.  Notwithstanding, this request falls well outside the scope of the government's Rule 16 discovery obligations.  See Barrera, 950 F. Supp. 2d at 475 (quoting United States v. Percevault, 490 F.2d 126, 131 (2d Cir. 1974)) (alterations in original) ("'Rule 16(a) simply does not encompass [the statements of co-

15

conspirators], nor does the Jencks Act [18 U.S.C. § 3500] permit their disclosure.").  As indicated above, in the event this request is not rendered moot, to the extent that such information becomes Giglio or Section 3500 material, such material would not be discoverable until trial.  See id.; Fed. R. Crim. P. 16(a)(2); 18 U.S.C. § 3500.

This request is also overly broad to the extent that it calls for documents not in the possession of the "prosecution team."  See Hunter, 32 F.4th at 36-37.

D.    Defense Request #4: "Recordings made by Michael Hlady of Steven Nerayoff, Jane Doe or John Doe."

The government is not aware of any such materials in its possession, however, to the extent it identifies any such materials, and in the event this request is not rendered moot, it will produce them pursuant to Fed. R. Crim. P. 16(a).

E.    Defense Request #5: "Emails and text messages between Michael Hlady and Jane Doe, John Doe or Jeff Pulver."

Pursuant to Fed. R. Crim. P. 16(a)(1)(E), the government has already produced materials responsive to this request, see, e.g., DOJ-000005936 to DOJ-000005965 (produced February 25, 2020), and, in the event this request is not rendered moot, will continue to do so to the extent it identifies additional such materials in its possession that have not already been produced.

F.    Defense Request #6: "To the extent that the FBI has created or maintained any file concerning Hlady and his status as an informant, information source or cooperator, such file would be relevant considering his charged status as a co-conspirator."

Notwithstanding the fact that Hlady was not a government agent, even if the government was in possession of such a file, which it is not, this request calls for internal government work product that is expressly protected from disclosure under Rule 16(a)(2).  Rule 16(a)(2), titled "Information Not Subject to Disclosure," expressly states that Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government

documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). "Nor does [Rule 16] authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Id. Documents subject to Rule 16(a)(2)'s protections are exempt from discovery "regardless of [their] materiality under Rule 16(a)(1)(E)." United States v. Messina, No. 11-CR-31 (KAM), 2011 WL 3471511, at *2 (E.D.N.Y. Aug. 8, 2011); see United States v. Vasquez, No. 15-CR-252 (PKC), 2021 WL 2186224, at *3 (E.D.N.Y. May 27, 2021) ("[a] defendant . . . is not entitled to discovery of [items subject to Rule 16(a)(2)] regardless of the materiality of such items.").

G.      Defense Request #7: "We also request an opportunity to examine any cell phone or personal computer, laptop, tablet or any other device in the possession of the government to search for the items sought in paragraphs 1-7 [sic]."

This request is wildly overbroad and would amount to an endless and unchecked fishing expedition across any and all electronic devices in the government's possession. As the government has informed Nerayoff on numerous occasions, he may examine the physical evidence discoverable under Rule 16, including original documents, by calling us to arrange a mutually convenient time. To the extent this request calls for information that is not discoverable under Rule 16, for the reasons set forth above, this request should be denied.

H.      Defense Request #8: "Any reports or notes by members of the Federal Government regarding the arrest of Steven Nerayoff on September 19, 2019 and a copy of the warrant to search Mr. Nerayoff's home on that date."

The portion of this request that calls for internal government reports or notes should be denied because it calls for government work product that is expressly protected from disclosure under Rule 16(a)(2). See Fed. R. Crim. P. 16(a)(2) (Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the

17

case."); see also Barrera, 950 F. Supp. 2d at 475 ("The plain language of Rule 16(a)(2) shields the Government from producing arrest or incident reports prepared by local or federal law enforcement. Furthermore, case law interpreting Rule 16(a)(2) is legion and overwhelmingly refutes Defendant's argument that he is entitled to the discovery material listed above."). This request is also overly broad to the extent that it calls for documents not in the possession of the "prosecution team." See Hunter, 32 F.4th at 36-37. Nevertheless, to the extent such materials contain information that is otherwise discoverable and that has not yet been produced, and in the event this request is not rendered moot, the government will produce this information.

Finally, the government did not seek, obtain or execute a warrant to search Nerayoff's home.

I.   Defense Request #9: "A copy of the subpoena that Mr. Nerayoff received on February 27, 2018 pertaining to a purported investigation of Jonathan Lucas."

Contrary to the defendant's assertions (Def. Mot. at 19), the government has not refused to provide this subpoena to Nerayoff. Nerayoff acknowledges having received it on February 27, 2018. Nevertheless, in the event this request is not rendered moot, the government will provide Nerayoff with another copy.

J.   Defense Request #10: "A copy of any notes and reports relating to Mark Bartlett, Esq. contact with the NYC FBI office in September of 2018 relating to Company 1, Nerayoff, Hlady, Jane Doe or John Doe."

This request is overly broad and falls well outside the scope of the government's discovery obligations. To the extent this request calls for documents and records produced by Company 1 to the government, the government has already produced, pursuant to Fed. R. Crim. P. 16(a)(1)(E), voluminous documents responsive to this request, [Company1]_000001 to [Company1]_041891 (produced June 29, 2020), and, in the event this request is not rendered moot,

will continue to do so to the extent it identifies additional such materials in its possession that have not already been produced.

However, to the extent this request calls for internal government reports or notes, this request should be denied because it calls for government work product that is expressly protected from disclosure under Rule 16(a)(2) for the reasons set forth above.  Finally, to the extent this request calls for <u>Giglio</u> or Section 3500 material, such material is not discoverable at this time. <u>See</u> Fed. R. Crim. P. 16(a)(2); 18 U.S.C. § 3500.

> K.    <u>Defense Request #11: "To inspect and to copy, photograph, etc. any of Mr. Nerayoff's papers, documents, data, photographs, tangible objects, in the government's possession, custody, or control obtained from Mr. Nerayoff or previously under his control—including but not limited to the digital information the Government received from Apple Inc. that resided on Mr. Nerayoff's Apple i-cloud backup."</u>

The government is aware of its discovery obligations under Rule 16(a)(1)(E). Contrary to Nerayoff's speculation, the government did not seize or even have access to the contents of his Apple iCloud account including any backups.  Similarly, the government did not obtain access to the contents of Nerayoff's iPhone.  The government did, however, obtain non-content subscriber information responsive to this request, and in the event this request is not rendered moot, will produce this information.

<u>THE GOVERNMENT'S MOTION TO DISMISS</u>

Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, the United States of America, by and through the undersigned counsel, hereby moves to dismiss the Indictment filed in the above-captioned case against the defendant Nerayoff.

As noted above, on January 10, 2020, a grand jury in this District returned the four-count Indictment charging the defendant Nerayoff with (i) one count of Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951, (ii) two counts of substantive Hobbs Act extortion,

in violation of 18 U.S.C. § 1951, and (iii) one count of conspiracy to commit extortion over interstate communications, in violation of 18 U.S.C. § 875(d).

The government's motion to dismiss is based on the following factors: (i) material exculpatory evidence obtained by the government well after return of the Indictment; (ii) subsequent investigation based on that evidence; (iii) the present inability to admit other evidence at trial, which the government views as essential to proving its case-in-chief; and (iv) the substantial likelihood that the government's inability to admit such evidence will not improve with time.  Accordingly, the government is unable to prove the charges in the Indictment beyond a reasonable doubt.  As a result, the government submits that dismissal of the Indictment is in the interests of justice.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that Defendant's Motion be denied in its entirety, and the government's motion to dismiss the Indictment be granted.

Dated:     Brooklyn, New York
           March 20, 2023

                              Respectfully submitted,

                              BREON PEACE
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


                    By:     /s/ Jonathan P. Lax
                            Jonathan P. Lax
                            John O. Enright
                            Assistant United States Attorney
                            (718) 254-7000

20