**Michael A. Scotto**
**Attorney-at-Law**
**1225 Franklin Ave, Suite 325**
**Garden City, NY 11530**
mascottoesq@gmail.com
*mobile: 516-506-2302*
*fax: 516-706-7312*

March 28, 2023

The Honorable Margo K. Brodie
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*By ECF*

Re: <u>United States v. Steven Nerayoff--Crim. No. 20-008 (MKB)</u>

Dear Judge Brodie:

I submit this letter motion seeking an order from the Court vacating the October 19, 2019 protective order issued by the Hon. Vera M. Scanlon of this court (ECF Document 21) and amending the indictment to reflect the true names of the alleged "victims," John Doe, Jane Doe and Company 1.  The government opposes my requests and I believe will be submitting opposition papers.[1]

Judge Scanlon's protective order was supported by a sealed application which does not appear in ECF.  On the basis of that application, Judge Scanlon ordered, in pertinent part,

> IT IS HEREBY ORDERED that any information produced in the above-captioned case that contains the name or voice of the victims (referred to as John Doe and Jane Doe in the complaint) or that could be used to discern the victims' identities, including but not limited to audio recordings (as well as draft transcripts thereof), reports and affidavits (collectively, the "Protected Materials") may not be disseminated beyond the defendants, their attorneys and their attorneys legal staff.

> IT IS HEREBY ORDERED that the Protected Materials shall be returned to the government at the conclusion of the case.

---

[1] In the event the government files opposition papers, I request a week to submit a reply to those papers.

Both Mr. Nerayoff and the government have moved to dismiss the indictment. Although we strongly disagree as to the basis for which the Court should dismiss the indictment, it does appear that given the record presented to the Court and the relief sought by each side, that an order dismissing the indictment may be forthcoming and with such an order the conclusion of the case.

Mr. Nerayoff has been under the specter of a fabricated prosecution since he was arrested on September 19, 2019.  He has lost the opportunity to conduct business, he has been ostracized in his community (even close family members stopped speaking to him  after his arrest), and his reputation in both his local community and the business world has been ruined—a Google search for Mr. Nerayoff's name returns page after page of stories branding him an extortionist based upon the false accusations of John Doe and Jane Doe that the government advanced.

Mr. Nerayoff's situation is reminiscent of former United States Secretary of Labor Ray Donovan's plight when, after his acquittal at trial on a case that "several jurors said should not have been brought," Donovan famously stated "[w]hich office do I go to to get my reputation back?[2]"

There is of course no such office of reputational restoration after the termination of an unwarranted prosecution. Mr. Nerayoff himself, however, has the power to restore his reputation through several civil actions that he intends to bring after the conclusion of this case.  The requested order vacating the protective order will allow Mr. Nerayoff to retain copies of all the materials the government provided as those materials are critical to the success of the civil actions that he intends to bring.[3]

While a court should not vacate a protective order lightly, I submit that there was never any reason to grant the protective order in the first place or for the use of the pseudonyms "Company 1," "John Doe" or "Jane Doe" in the indictment.  Mr. Nerayoff and his alleged co-conspirator Michael Hlady,

---

[2] https://www.nytimes.com/2021/06/05/us/raymond-j-donovan-dead.html

[3] One such action that Mr. Nerayoff intends to bring is a Bivens action (see, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  An indictment however creates a presumption of probable cause which would be fatal to some causes of action that might be asserted against the government in that action. That presumption however may be overcome by evidence that  "the indictment was the product of fraud, perjury, the suppression of evidence [by the investigating agency] or other [investigative agency] conduct undertaken in bad faith."  *Appling v. City of New York*, 2021 U.S. Dist. LEXIS 34060 * 12 (EDNY, Brodie, Ch. J). We believe that the discovery material provided to Mr. Nerayoff will be critical to that action as it will rebut the presumption of probable cause.  Another action that Mr. Nerayoff intends to bring is one in the nature of breach of contract (and other causes of action), related to Company 1's and its executives John Doe and Jane Doe.  Clearly evidence that one or both concocted the false narrative which led to Mr. Nerayoff's prosecution and Company 1 retaining Mr. Nerayoff's 2.2 billion tokens (+ additional loyalty company tokens), worth more than $300,000,000.00 at one point, will be material to that action.  A third action would be against a company that, after learning of Mr. Nerayoff's indictment, accused Mr. Nerayoff of committing similar conduct with them so that they could breach their contract with Mr. Nerayoff, secure in the fact that Mr. Nerayoff could not seek to sue them for that breach, as the government had promised to introduce the material provided by that company at trial by way of a FRE 403(b)(2) motion.  Indeed, the government provided Mr. Nerayoff with 52,815 pages of that company's records as part of the June 16, 2021 discovery (see ECF 87, June 16, 2021 production:  AH0000001 through AH00052815), in an attempt to convince him to plead guilty to this indictment.

who the government now concedes had been in communication with the FBI during the course of the alleged "extortion," were both intimately familiar with "Company 1," "Jane Doe" and "John Doe."

Indeed, although the government crafted an indictment which didn't identify the alleged victims by their actual names and then secured a protective order to further conceal their identities, the identity of the alleged "victims" is no secret.  Both the government's press release after Mr. Nerayoff's arrest[4] and the complaint referenced in the press release not only revealed that Company 1 was based in Seattle, but both also provided details about the ICO that would make it virtually impossible for anyone in the crypto world to not know the true identity of Company 1.

A simple Google search using the search terms "Nerayoff," "Extortion," "September," and "Seattle," leads to the following two articles:

*Seattle Times (updated) September 23, 2019[5]*

The Seattle Times published an online story which reported both the actual names of Company 1 and John Doe. The article noted that "[t]he federal charges don't name the target of the alleged extortion, calling it "Company 1," but all signs point to (actual name of Company 1), which pays users in cryptocurrency to test third-party apps.  Founded in 2015 by then-24-year-old (actual name of John Doe), a graduate of the University of Washington, (actual name of Company 1) is backed by a pantheon of local blockchain titans, including Bill Shihara, the founder of Bittrex, one of the world's most popular cryptocurrency exchanges.  Reached by text message, (actual last name of John Doe), the (actual name of Company 1) CEO, said he had been asked not to comment on the investigation. But the timeline of Nerayoff's involvement in the company laid out in the warrants matches (actual name of Company 1) documents."

The Seattle Times article continues: "The complaint alleges that in July 2017, the Seattle company contracted Nerayoff to help craft the startup's image and line up strategic partnerships and investors prior to a public sale of its cryptocurrency tokens — what's known as an "initial coin offering." In exchange, Nerayoff would be paid 22.5% of all cryptocurrency tokens issued and the same percentage of all funding the company raised. Part of Nerayoff's job was to help the company draft a "white paper," a position statement for investors. (Actual Name of Company 1)'s October 2017 white paper gives "a very special thanks to our advisors" — including Steven Nerayoff, listed in the document as (actual name of Company 1)'s chief strategist, the same title he uses on LinkedIn to characterize his time at (Actual Name of Company 1).  Federal prosecutors allege that before the company's initial coin offering, or "crowdsale," Nerayoff helped attract $16 million in seed funding, in the form of the cryptocurrency Ethereum. According to the terms of his contract, Nerayoff would have been entitled to $3.7 million. Instead, he demanded more than twice that amount — $8.75 million — and told executives that if they did not pay, he would "sabotage the crowdsale, generate negative press … and use his contacts with influential people to 'destroy'" the

---

[4] https://www.justice.gov/usao-edny/pr/two-arrested-extortion-startup-cryptocurrency-company

[5]         https://www.seattletimes.com/business/technology/consultant-extorted-8-million-from-seattle-cryptocurrency-startup-feds-charge

company. Under pressure, executives paid Nerayoff an additional $3.78 million in Ether tokens, the complaint alleges. Days before, (actual name of Company 1) had posted a photo on Twitter of Shihara, Nerayoff and (actual name of John Doe) with their arms around each other and two other cryptocurrency pioneers, Anthony Di Iorio and Jeff Pulver. "A few of our key advisors," the post read. "Excited to continue working alongside you all."

***GeekWire September 20, 2019 Cryptocurrency extortion scheme targeted Seattle startup (Actual Name of Company 1), report says[6]***

A September 20, 2019 GeekWire article also included the actual names of Company 1, John Doe and Jane Doe.  GeekWire reported "[e]arlier this week, two men were arrested in Brooklyn and Rhode Island and charged in federal court with extorting an unnamed cryptocurrency startup for millions of dollars. That company appears to be Seattle startup (actual name of Company 1), according to a report by cryptocurrency news site CryptoSlate."

"According to the allegations, cryptocurrency advisor and investor Steven Nerayoff and his accomplice Michael Hlady made repeated threats, including physical intimidation, to sabotage the company if their demands for money weren't met. In the end, Nerayoff and Hlady took more than $8 million in digital currency from the company as part of the scheme, investigators said."

"Of the companies in Seattle's relatively small blockchain ecosystem, only one company fits the description made in the legal complaint — (actual name of Company 1)," wrote CryptoSlate reporter Mitchell Moos.

"(Actual name of Company 1) matches the FBI's description of a Seattle-based organization that operates a "mobile-based business that specializes in generating user traffic to clients' products by issuing rewards in the form of cryptocurrency tokens."

The GeekWire story also noted that "(Actual name of Company 1), co-founded in 2015 by (actually name of John Doe), operates a platform that lets users earn cryptocurrency by performing small tasks. (Actual last name of John Doe) is a University of Washington grad who also founded Bomba Fusion, a Korean fusion food truck and catering business in Seattle.

"(Actual last name of John Doe) told GeekWire that he was "asked not to comment on the DOJ investigation." GeekWire contacted other current and former (actual name of Company 1) employees and will update this story with their response."

"The chief operating officer of the target company, a woman, was allegedly threatened in the middle of the night by Hlady. The COO was spending the night at Nerayoff's house due to a snowstorm that prevented her from catching a flight from New York."

The GeekWire article also noted that "(Actual name of Jane Doe) was COO of (Actual name of Company 1) at the time of the events. She has since left the startup and now serves as chair of the blockchain council at the Washington Technology Industry Association (WTIA)" and that "If Nerayoff was extorting (Actually name of Company 1), it was not obvious to the outside world.

---

[6] https://www.geekwire.com/2019/cryptocurrency-extortion-scheme-targeted-seattle-startup-(actual name of Company1)-report-says

Also in March 2018, Nerayoff tweeted a photo of himself with (Actual first name of Jane Doe) and (actual first name of John Doe), writing, "Great friends in blockchain are immutable!" The article included a copy of the picture and offered readers the option to "Read the full FBI complaint below," through Scribd.

Finally, when the government provided an additional copy of the government's discovery to Mr. Nerayoff's former counsel, the cover letter, which was publicly filed with the Court, contained a reference to "(Actual Name of Company 1)_000001 through (Actual Name of Company 1)_041891 (see ECF 87, June 8, 2022 letter to Marc Agnifilo, Esq., referencing June 29, 2020 production).

I submit that on October 18, 2019, when the government obtained the protective order there was no necessity to protect the identities of the alleged victims as it was already well known in Seattle and in the crypto community that they were the alleged victims of Mr. Nerayoff's alleged crimes as a result of the government's September 18, 2019 press release which provided so much unnecessary detail that it may as well have used the actual name of Company 1. The press release revealed that "[t]he victim company, headquartered in Seattle, Washington, is a startup mobile-based business that specializes in generating user traffic to clients' products by issuing its own cryptocurrency tokens as loyalty rewards. In November 2017, the company planned an Initial Coin Offering (ICO) to raise capital, and signed an agreement with an entity operated by Nerayoff." If protecting the identities of John Doe, Jane Doe and Company 1 was so important that the government not only crafted an indictment using those pseudonyms and obtained a protective order why did the government issue a press release that for all intents and purposes actually named Company 1, John Doe and Jane Doe?

I respectfully submit that there is even less of a reason to maintain their anonymity now given the fact that the record before the Court clearly establishes that they lied about their dealings with Mr. Nerayoff now that those lies have been revealed.

The protected materials do not reveal law enforcement investigative techniques (*United States v. Bin Laden*, 2001 U.S. Dist. LEXIS 614 (SDNY Jan. 26, 2001) or the identity of government undercover agents (*United States v. Stevens*, 2022 U.S. Dist. LEXIS 36094 (SDNY Feb. 25, 2022), they don't jeopardize ongoing investigations (*United States v. Smith*, 985 F. Supp. 2d 506, 523-524 (SDNY 2013), and there is no credible showing of danger to individuals *United States v. Urena*, 989 F.Supp.2d 253, 262 (SDNY 2013). Allowing the protective order to remain in place at the conclusion of this case will merely make it harder for Mr. Nerayoff to seek the justice that the government has denied him for the last three and a half years.

Finally, given the absence of any danger to the alleged victims or even risk of economic harm, the indictment' use of pseudonyms, particularly when Mr. Nerayoff knew who the alleged victims were merely served to create the unwarranted appearance that the allegations must have been true as the government could not even name the alleged victim because of the fear that harm might come to them if only Mr. Nerayoff and his non-existent criminal cabal might learn their identities.

Although the Second Circuit does not appear to have visited the issue of the use of pseudonyms in place of the names of alleged victims in an indictment, the Second Circuit has ruled on the

propriety of concealing the name of the parties in civil litigation. See, *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189 (2nd Cir. 2008).  While the Second Circuit noted that the examples they gave were not exhaustive and a District Court should take into account any other factors relevant to the particular case under consideration, I submit that anonymity should have only been granted to the alleged victims if the charges involved matters that were highly sensitive and of a personal nature, or their identification posed a risk of retaliatory physical or mental harm. Neither factor applied here, as the allegations in the indictment were neither highly sensitive nor of a personal nature and their identification did not pose a risk of retaliatory harm.

Anonymity is even more unwarranted now as it is clear that Company 1, John Doe and Jane Doe were not Mr. Nerayoff's victims, they victimized him.  I submit that at this point, the world should know who they are and what they have done, they don't deserve the anonymity of a pseudonym, and they never did.

Wherefore, Mr. Nerayoff respectfully requests that this Court vacate the October 19, 2019 protective order issued in this case and allow him to retain copies of the material the government provided in discovery for use in any civil action he initiates relating to those materials, and order that the indictment be amended to reflect the true names of Company 1, John Doe, and Jane Doe.


Respectfully submitted,
Michael A. Scotto




cc: Counsel for the Government via ECF (letter only)