

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

DCP:JPL/JOE
F. #2018R00035

April 10, 2023

By ECF

The Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Steven Nerayoff
                Criminal Docket No. 20-008 (MKB)

Dear Judge Brodie:

        The government respectfully submits this letter in opposition to the defendant Steven Nerayoff's March 28, 2023 letter motion to vacate the Protective Order and to amend the Indictment, which both parties have moved to dismiss, to deanonymize the names of the victims of the charged crimes. ECF Dkt. No. 117 (the defendant's "Motion" or "Def. Mot."). For the reasons set forth below, the defendant's Motion should be denied in its entirety.

I.      Background

        On September 18, 2019, the defendant was arrested pursuant to a criminal complaint charging Hobbs Act Extortion Conspiracy, in violation of 18 U.S.C. § 1951(a). See ECF Dkt. Nos. 1, 5 and Sept. 19, 2019 Minute Entry.

        On October 18, 2019, upon application of the government, and with the consent of the defendant and his co-defendant Michael Hlady, Magistrate Judge Vera M. Scanlon entered the Protective Order. ECF Dkt. No. 21. The Protective Order prohibits the dissemination beyond the defendants, their attorneys and their attorneys' legal staff, of material produced by the government that contains the name or voice of the victims or that could be used to discern the victims' identities (collectively, the "Protected Materials"). Id. Pursuant to the terms of the Protective Order, Nerayoff also agreed to return the Protected Materials to the government "at the conclusion of this case." Id. at 2.

The same day the Protective Order was entered, and prior to the return of any indictment in this case, the government produced to Nerayoff, pursuant to the terms of the Protective Order, audio recordings, draft transcripts of the recordings, and other documents.[1]

On January 10, 2020, a grand jury in this District returned a four-count Indictment charging Nerayoff and his co-defendant Hlady for their roles in a conspiracy and scheme to extort money and virtual currency from victims Company 1, a Seattle, Washington-based cryptocurrency business, John Doe, Company 1's Chief Executive Officer, and Jane Doe, Company 1's President and Chief Operating Officer.[2]  Thereafter and on numerous occasions, pursuant to Rule 16 of the Federal Rules of Criminal Procedure and subject to the terms of the Protective Order, the government continued to produce discovery to the defendants.  Productions included, among other items, text messages, email communications and audio recordings involving one or more of the defendants and one or more of the victims, as well as more than 40,000 pages of other documents and records, all of which were obtained by the government from multiple sources including from the victims themselves.

On February 13, 2023 and March 20, 2023, the defendant and the government, respectively, moved to dismiss the Indictment.  See ECF Dkt. Nos. 105, 112.  Those motions are pending.  Notwithstanding, on March 28, 2023, the defendant filed the instant Motion to vacate the Protective Order and to amend the Indictment.

II.     Discussion

The defendant's Motion is legally baseless and seeks relief to which he is not entitled that would potentially expose third parties and victims to an unreasonable invasion of privacy.  For the reasons set forth below, the government respectfully submits that the Motion should be denied.

   A.     The Protective Order Should Not Be Vacated

Nerayoff seeks to vacate the Protective Order so that he can utilize Protected Materials obtained in the course of the criminal discovery process to advance any "civil actions

---

[1]     The draft transcripts were also produced to Nerayoff pursuant to a stipulation between the parties that such transcripts, among other things, "cannot be used in any proceeding by any person, including persons who are not parties to this case" and "may not be furnished, directly or indirectly, by the defendant or defense counsel, to anyone other than legal staff or an attorney who has signed [the] stipulation."

[2]     Specifically, Count One of the Indictment charges Nerayoff and Hlady with Hobbs Act Extortion Conspiracy between June 2017 and November 2018, in violation of 18 U.S.C. § 1951(a); Count Two charges Nerayoff with Hobbs Act Extortion between October 2017 and November 7, 2017, in violation of 18 U.S.C. § 1951(a); Count Three charges Nerayoff and Hlady with Hobbs Act Extortion in or about March 2018, in violation of 18 U.S.C. § 1951(a); and Count Four charges Nerayoff and Hlady with Conspiracy to Transmit Interstate Communications with Intent to Extort between March 22, 2018 and March 28, 2018, in violation of 18 U.S.C. § 371.

that he intends to bring," that, in his sole discretion, relate to those materials. See Def. Mot. at 2, 6. In support of that request, Nerayoff does not cite any authority for the proposition that he is permitted to engage in such an unfettered use of protected criminal discovery material in subsequent civil actions. Indeed, for the reasons set forth below, he is not permitted to use the Protected Materials for such a purpose.

Under Federal Rule of Criminal Procedure 16(d) courts may issue a protective order restricting the dissemination of discovery for good cause. See Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Stewart, 590 F.3d 93, 98-99 (2d Cir. 2009) (citing Fed. R. Crim. P. 16(d)); In re: Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect").

By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly. See Seattle Times Company v. Rhinehart, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); Smith, 985 F. Supp. 2d at 519 (noting that pretrial discovery "is usually conducted in private"). Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party to another should not be disseminated before trial to members of the public. See Anderson, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."); United States v. Kerik, No. 07-CR-1027 (LAP), 2014 WL 12710346, at *1 (S.D.N.Y. Jul. 23, 2014) ("There is no presumptive right of public access to documents exchanged by parties during discovery and not considered by the Court." (citing United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)), United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

As an initial matter, Nerayoff consented to the entry of the Protective Order and thereby expressly agreed to return the Protected Materials to the government at the conclusion of this case. See Protective Order at 2. Because Nerayoff's Motion ignores the fact that he consented to the entry of the Protective Order, his argument that there was never any good cause for its entry in the first instance rings hollow. See Def. Mot. at 2. Nerayoff should be bound to his agreement, upon which the government relied in producing discovery in this case, as did the court in entering the order. For this reason alone, Nerayoff's Motion to vacate the Protective Order should be denied. See Kerik, 2014 WL 12710346, at *1 ("it is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have

3

reasonably relied.'") (quoting S.E.C. v. TheStreet.com, 273 F.3d 222, 230-31 (2d Cir. 2001); id., at *2 (denying request to vacate protective order where defendant intended to use documents in a private dispute, in part, because defendant "expressly agreed to be bound by the Protective Order").

Moreover, contrary to his assertion, Rule 16 does not confer to Nerayoff a property interest in materials produced to him. See United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) ("To the extent any Rule 16 property interest in [company timesheets] exists, we find it belongs to the corporation rather than defendant," even where defendant was president of the corporation's parent company); see also United States v. Garcia, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005) (no property interest conferred to defendant by production of Jencks Act material). Likewise, here, to the extent any property interest exists in the Protected Material, it is held by third parties including, but not limited to one or more of the victims.[3] In producing materials to the government, Company 1 expressly requested that such materials be treated as confidential in accordance with applicable laws and regulations, and did not waive any privileges or protections. Consequently, Nerayoff has no right under the law or the Protective Order to even maintain possession of these materials following the conclusion of this case, let alone be relieved of his obligations to refrain from disseminating these materials.

Vacating the Protective Order would also implicate the privacy interests of not only Company 1, John Doe and Jane Doe, but also hundreds of additional third parties. By way of example, Protected Materials obtained by the government from Company 1 and produced to Nerayoff pursuant to the Protective Order include Company 1 bookkeeping and accounting records, investor information, and customer details (including names, telephone numbers, email addresses, and mailing addresses), among other forms of personal, private and sensitive information and correspondence which has never been publicly disclosed. Lifting the restrictions of the Protective Order would effectively enable Nerayoff to publicize any or all of this information—through media outlets, the Internet, or otherwise—without any judicial supervision or consequence for his own ends, including retaliation. Remarkably, in his Motion, Nerayoff provides virtually no assurance that he would refrain from doing so. See Def. Mot., at 6 (referring to the victims, "I submit at this point, the world should know who they are and what they have done, they don't deserve the anonymity of a pseudonym, and they never did.").

The Protected Materials also include consensually recorded conversations that captured at least one additional third-party individual who is not one of the defendants, not one of the victims, and has not been charged with any criminal offenses, but was nonetheless a participant in one or more conversations that contributed to the evidentiary basis for criminal

---

[3] The government does not dispute that the Protective Order does not apply to material in the public domain (other than through a violation of the Protective Order), or information obtained by Nerayoff independently from the government. Indeed, much of the material that Nerayoff relies on in his motion to dismiss the Indictment (and presumably he would rely upon in any civil action that he may bring) was not in the government's possession until Nerayoff produced it to the government, see, e.g., ECF Dkt. No. 105-1, at ¶ 105 (describing Nerayoff's production of material to the government), and, therefore, would not fall under the restrictions of the Protective Order.

charges. Public release of these recordings would unnecessarily implicate in detail and for the first time, this individual's presence and participation in activities that were subject of a government investigation and criminal prosecution, causing undue and irreparable reputational harm. In sum, the risk of harm to countless third parties overwhelmingly counsels against lifting the Protective Order. See Kerik, 2014 WL 12710346, at *2 (implicating the privacy interests of many third parties factor against vacating protective order); see also United States v. Jackson, No. 21-CR-537 (LTS), 2022 WL 582700, at *2 (S.D.N.Y. Feb. 25, 2022) (privacy interests of innocent third parties may constitute good cause for issuance of a protective order).

Public release of the Protected Materials is also likely to have a chilling effect on crime victims' willingness to report crimes to law enforcement authorities and cooperate with government investigations, thereby harming the government's and the public's joint interests in investigating and prosecuting criminal conduct. Vacating the Protective Order would send a message to the victims of crimes that they cannot be reasonably assured that their identities, confidential reports or provision of evidence to investigative and prosecutorial authorities will be kept confidential and made public only as required by law and subject to judicial supervision. Instead, the message to victims would be that they should expect that their private and sensitive information may one day end up in the public realm. As a result, countless crimes may go unreported, uninvestigated, and unprosecuted.

Finally, the Protective Order does not prevent Nerayoff from requesting discovery of these documents in other proceedings, subject to court supervision and appropriate non-disclosure provisions and discovery protocols. See Kerik, 2014 WL 12710346, at *2. The fact that Neryoff believes that the Protected Material will be useful in future lawsuits is not a basis to permit his unrestricted retention of it, particularly where, as here, he has already agreed to return it. "His request to vacate the Protective Order appears to be nothing more than an attempt to perform an end run around discovery procedures," see id., and should be denied.

B. The Indictment Should Not Be Amended

Nerayoff also seeks to amend the Indictment and deanonymize the names of the alleged victims. Once again, Nerayoff cites no meaningful legal authority to establish that he has the right to do so. He does not.

As an initial matter, in light of the parties' pending motions to dismiss the Indictment, the Court should reject this request as moot.

Nevertheless, even if the Court were to reach the merits of Nerayoff's request to amend the Indictment, that request should be denied. Nerayoff has no right of authorship over the Indictment. Though drafted by attorneys for the government, an indictment is a document of the grand jury. See United States v. Dhinsa, 243 F.3d 635, 667 (2d Cir. 2001) (in general, action by the grand jury is required to amend an indictment). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and need "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000).

5

In light of the foundational principle than an indictment need only provide notice of the charges a defendant must defend against at trial and is specific enough to protect his double jeopardy rights should he prevail at trial, see Russell v. United States, 369 U.S. 749, 765 (1962), the "identity of a victim is not required in an indictment unless it is 'of such importance to the fairness of the proceeding that it must be spelled out in the indictment.'" United States v. Kidd, 386 F. Supp. 3d 364, 369 (S.D.N.Y. 2019). Even in such rare circumstances where the victim's identity is a required component of the indictment or an essential element of the crime charged—which, here, it is not—the remedy would be disclosure of the identity through a bill of particulars, not an amendment to the indictment. See id. (noting in an identity theft case, "the defendant is of course entitled on demand to [disclosure of the victim's identity] in a bill of particulars or otherwise."). Even in his motion to dismiss the Indictment, Nerayoff made no claim that the Indictment failed to satisfy the Rule 7 pleading requirement, nor does he make that claim in the instant Motion. Here, because the Indictment is facially sufficient and Nerayoff knows the identities of the victims alleged in the Indictment, no further action is warranted.

The only case cited by Nerayoff in support his motion to amend the Indictment and deanonymize the victims is Sealed Plaintiff v. Sealed Defendant #1, et al., 537 F.3d 185 (2d Cir. 2008), a civil case, which has no relevance here. Nevertheless, even if the Court were to consider that case in the dramatically different context presented here, Sealed Plaintiff plainly supports the government's use of pseudonyms in the Indictment. In Sealed Plaintiff, the Second Circuit vacated the order of a district court that had denied a pro se plaintiff's application to prosecute her case under a pseudonym. 537 F.3d at 190. Here, the affected privacy interest is not even that of a party, but rather, one step further removed: a third-party.

In his Motion, Nerayoff also argues that a victim's identity should be anonymized in an indictment only where charges involve matters "that were highly sensitive and of a personal nature, or the identification posed a risk of retaliatory physical or mental harm." Def. Mot., at 6. Nerayoff does not identify a single case where the use of a pseudonym to protect the identity of a crime victim was prohibited, categorically or otherwise, and the government is not aware of any. Indeed, such a rule would flout the Crime Victim Rights' Act ("CVRA"), which affords victims of all crimes, among many other important rights, the "right to be treated with fairness and with respect for the victim's dignity and privacy," 18 U.S.C. § 3771(a)(8), and not just victims of crimes that Nerayoff, in his subjective view, thinks are sufficiently sensitive or personal. The fact that the identities of victims may otherwise be publicly discoverable, see Def. Mot., at 3-5, also does not establish a basis to otherwise disregard the rights afforded to crime victims—regardless of whether prosecution of those crimes is successful—let alone a basis to amend an indictment. Indeed, to do otherwise, would set a dangerous precedent and turn the CVRA on its head.

Finally, as is made plain by his Motion, Nerayoff's request to amend the Indictment and deanonymize the victims is clearly retaliatory and vindictive. See Def. Mot., at 6 (referring to the victims, "I submit at this point, the world should know who they are and what they have done, they don't deserve the anonymity of a pseudonym, and they never did."). Nerayoff concedes in his Motion that the identities of the victims are publicly available. Thus, his requested relief serves no legitimate purpose. While Nerayoff is free to pursue lawful

recourse should he so choose, the Court should reject his attempt to subvert the imprimatur of the Court for his own personal purposes.

III. Conclusion

For the foregoing reasons, the Court should deny Nerayoff's Motion to vacate the Protective Order and to amend the Indictment in its entirely.

Respectfully submitted,

BREON PEACE  
United States Attorney

By:       /s/  
Jonathan P. Lax  
John O. Enright  
Assistant U.S. Attorneys  
(718) 254-7000

cc: Michael A. Scotto, Esq. (by ECF)